William Mertens, J.
On the issues of liability I am satisfied from the proof before me that the plaintiff is not guilty of contributory negligence in causing this accident. I am also satisfied on the evidence before me that both defendants are guilty of negligence and that the negligence of each was a proximate cause of the damage to the plaintiff’s vehicle. I accept the basic version of the plaintiff that there were two impacts in this case and find that both of the defendants were negligent as I have said. It is, of course, difficult to determine exactly what damage flowed from one impact or the other, but I do not think that is necessary in this particular case. The defendants are responsible for the over-all damage to the plaintiff’s vehicle in this accident; the two impacts being almost simultaneous in this chain car collision.
Insofar as the matter of apportionment is concerned under the doctriné enunciated in Dole v. Dow Chem. Co. (30 N Y 2d 143), I think under the circumstances of this case it would be proper to assess the damages in equal proportion between these two defendants. I might normally, in a case of this nature, and if there were greater clarification concerning the extent of the precise -damage caused by each, say that the final car pay two thirds and the second car, that is, the intermediate car pay one third. However, in this case, it does seem to me that the fairest apportionment between the defendants is an equal apportionment.
*229 I find that the plaintiff has sustained by the evidence its claim of property damage in the amount of $2,424.92 and that it is entitled to interest on said claim from August 14, 1969.
Now, the remaining problem in the case is this defense of immunity pleaded on behalf of the Union of Soviet Socialist Republics (U. S. S. R.). In view of this defense, it is proper to note that in reality this is a ease involving three insurance carriers. The first is the subrogee of the plaintiff. The second is the carrier for the car directly behind the plaintiff, and the third carrier represents the car owned by the U.S.S.R. Now, who is it that is really asserting the claim of immunity in this case? Certainly, there is no evidence to indicate that the U.S.S.R. is asserting any claim of immunity in this case. As a matter of fact, the U.S.S.R. took steps to obtain an insurance policy to cover it against just such accidents as this in which vehicles owned by it might be involved on the highways of this city. Thus, this is really not a contest involving the rights of a .sovereign government to assert a claim of sovereign immunity in accordance with the provisions of law. Rather it is simply that of an insurance company who sold an insurance policy to the U. S. S. R. and now asserts that it can claim the sovereign immunity that the U. S. S. R might have and that it can do so by simply standing up in court and saying, “We represent a sovereign government; therefore, we have immunity ”. The law just does not recognize any such right on the part of this insurance carrier. The principles governing the defense of sovereign immunity are carefully reviewed and analyzed in Victory Transp. v. Comisaria General de Abastecimientos y Transportes (336 F. 2d 354), decided in the United States Court of Appeals for the Second Circuit, in 1964. The doctrine of immunity of foreign sovereigns from the jurisdiction of our courts was early entrenched in our law and arose in a society which was far different than that prevailing today. Recent developments in international law reflect the clear understanding that sovereign immunity is a derogation of the normal exercise of jurisdiction of our courts and that it should be accorded only in clear cases. Our State Department in 1952 publicly announced its policy to decline immunity to friendly foreign sovereigns in suits arising from private or commercial activity. A specific procedure for the assertion of immunity on behalf of a foreign sovereign has been clearly established. Primarily, this involves application on behalf of the foreign sovereign to our State Department who then conveys its suggestions with respect to the immunity question to the courts in appropriate formal documents. The appli *230 cation must be made by one specifically authorized on behalf of the foreign government to interpose a claim of sovereign immunity. It is clear in this case that no application has been made by the U. S. S. R. to our State Department to assert a claim of sovereign immunity in connection with this case involving the operation of a motor vehicle owned by the U. S. S. R. in this country. There is no evidence in this case .showing whether the operation of this car involved a sovereign act or a commercial or private act at the time of the accident. Moreover, it is also clear from Victory Transport, cited above that a foreign sovereign may itself waive the claim of sovereign immunity. It seems to me that in this case it is clear that the U. S. S. R. has in fact waived such immunity by entering into a contract of insurance covering vehicles owned by it and driven by its employees on New York City streets. This insurance was presumably obtained in compliance with the New York statute relating to compulsory automobile insurance. It is not the U. ¡S. S. R. which is claiming immunity in this case but simply an insurance carrier from whom it bought a policy for the express purpose of insuring itself against liability for accidents involving its vehicles occurring on our highways. The insurance carrier has no authority to claim this immunity under the circumstances shown on the record in this case. Surely, public policy will not countenance the assertion of a claim of immunity on the part of an insurance carrier who has specifically contracted with a foreign sovereign government to give it insurance coverage in connection with accidents occurring on our highways. In substance, the carrier for the U. S. S. R., after having accepted premiums for its insurance coverage, now seeks to withdraw its coverage by the simple device of standing up in court and claiming immunity. To hold that an insurance carrier can under these circumstances assert its nonliability under its policy would be a travesty on our laws and public policy. It would in effect tell foreign governments that the policies they take out in this country are not worth the paper they are written on and that our insurance companies are collecting premiums but denying insurance. This court will not be a party to any such mockery of our laws.
Accordingly, plaintiff’s motion to strike the affirmative defense claiming immunity on behalf of the .IT. S. S. R. is granted. All motions are disposed of in accordance with the foregoing.